DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant David Freeland has appealed from his conviction and sentence in the Summit County Court of Common Pleas. We affirm.
 I {¶ 2} On March 16, 2007, Freeland borrowed his father's truck to pick up his niece from jail and to run various errands. Elvis Freeland, Freeland's father, reported his truck as stolen when Freeland returned home without it and indicated that his niece had stolen the vehicle. On March 19, 2007, however, Summit *Page 2 
County Sheriffs Deputy Michael Lowe discovered Freeland driving the missing truck through Twinsburg.
 {¶ 3} Deputy Lowe frisked Freeland for weapons and found a cigarette pack containing a pipe. When Deputy Lowe examined the pipe, he determined that it did not have an odor, but did contain a Chore Boy.[1] Deputy Lowe arrested Freeland, and he was indicted on charges of unauthorized use of a vehicle pursuant to R.C. 2913.03(B), illegal use or possession of drug paraphernalia pursuant to R.C. 2925.14(C)(1), and driving under suspension pursuant to R.C. 4510.11.
 {¶ 4} At trial, Freeland made two oral motions for acquittal. The trial court denied both motions and the jury convicted Freeland of illegal use or possession of drug paraphernalia and driving under suspension. The jury acquitted Freeland of the charge of unauthorized use of a vehicle. Freeland has appealed from the jury's verdict, raising one assignment of error for our review. *Page 3 
 II Assignment of Error "APPELLANT'S CONVICTION W[AS] BASED UPON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTIONS."
 {¶ 5} In his sole assignment of error, Freeland argues that his illegal use or possession of drug paraphernalia conviction was based on insufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *Page 4 
proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Freeland's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence *Page 5 
weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 8} The jury convicted Freeland pursuant to R.C. 2925.14(C)(1), which provided that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." The statute further provided that:
 "(A) As used in this section, `drug paraphernalia' means any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in * * * concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance[.] `Drug paraphernalia' includes, but is not limited to, any of the following[:]
 "* * *
 "(11) A container or device for storing or concealing a controlled substance;
 "* * *
 "(13) An object, instrument, or device for ingesting, inhaling, or otherwise introducing into the human body, marihuana, cocaine, hashish, or hashish oil, such as a metal, wooden, acrylic, glass, stone, plastic, or ceramic pipe, with or without a screen[.]
 "(B) In determining if any equipment, product, or material is drug paraphernalia, a court or law enforcement officer shall consider, in addition to other relevant factors, the following:
 "(1) Any statement by the owner, or by anyone in control, of the equipment, product, or material, concerning its use;
 "* * *
 "(11) The existence and scope of legitimate uses of the equipment, product, or material in the community[.]" R.C. 2925.14. *Page 6 
 {¶ 9} In defining the term "knowingly," the Revised Code provides that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Lastly, the Code provides that "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(D)(1).
 {¶ 10} Freeland argues that the State failed to prove that he possessed drug paraphernalia because it never tested the pipe that Deputy Lowe found for drug residue. Freeland claims that without testing the pipe for the presence of drugs, the State could not prove that he possessed drug paraphernalia rather than "an otherwise innocuous item." Yet, a conviction for the possession of drug paraphernalia does not hinge upon a finding that the defendant possessed a controlled substance. State v. Mullenix (Sept. 15, 1993), 9th Dist. No. 16229, at *2 (upholding separate convictions for possession of a controlled substance and possession of drug paraphernalia and noting that they are not the same offense for double jeopardy purposes). So long as the State presents other evidence that an *Page 7 
item satisfies the statutory definition of drug paraphernalia, the State is not required to prove that the item contained drug residue. SeeState v. Harris, 9th Dist. No. 22466, 2005-Ohio-4935, at ¶ 15-18
(affirming defendant's possession of drug paraphernalia conviction when officer testified that he found a pipe alongside a small bag of methamphetamines and the pipe could be used for smoking a number of drugs, including methamphetamines). While the presence of residue certainly supports the State's case, a lack of residue will not destroy it if the State is able to introduce other evidence.
 {¶ 11} The record reflects that the State presented the testimony of Deputy Lowe, a five year veteran of the Summit County Sheriff's Department. On direct examination, Deputy Lowe testified as follows:
 "Q: What did you find [in Freeland's pocket]?
 "A: I found a cigarette pack with what I believed to be a crack pipe in it.
 "* * *
 "Q: Deputy Low, I'm handing you what's been marked as State's Exhibit No. 4. Do you recognize that?
 "A: Yes.
 "Q: And how do you recognize it?
 "A: It's in the bag which I sealed. It's in my writing. It's the crack pipe that I found in the cigarette pack.
 "Q: Deputy Low, I'm sorry, I can't hear you.
 "A: I'm sorry. It's the crack pipe I found in the cigarette pack and it's in evidence. *Page 8 
 "* * *
 "Q: And when you say — you said crack pipe a few times. Can you describe why it is that you're saying it's a crack pipe?
 "A: I believe this is used for smoking crack. It's got Chore Boy in there which is a metal filter. And generally when somebody is smoking methamphetamines they use a glass pipe. There's no odor of marijuana in the pipe either so I believe it to be a crack pipe.
 "Q: Deputy Lowe, have you ever arrested other people with crack pipes?
 "A: A few times."
On rebuttal, Deputy Lowe testified as follows:
 "Q: Have you ever seen a pipe * * * in that condition that has any lawful purpose whatsoever?
 "A: Not to my knowledge. I've never observed any."
 {¶ 12} The State relied on Deputy's Lowe's testimony and the admission of the pipe into evidence to prove that the pipe was drug paraphernalia. Freeland never objected to Deputy Lowe's testimony in which he repeatedly referred to the pipe he found on Freeland as a "crack pipe." In fact, Freeland's own counsel asked him on direct examination whether the item was "your crack pipe." Although Freeland denied owning the pipe, he never denied that the pipe was a "crack pipe" as the State asserted. See R.C. 2925.14(B)(1) (noting that a court may use the statements of someone in control of an item to determine if it constitutes drug paraphernalia). Nor did Freeland present any evidence to contradict Deputy's Lowe's assertion that the pipe did not have "any lawful purpose." See R.C. 2925.14(B)(11) (providing that a court may consider an item's *Page 9 
legitimate uses in the community when determining whether it is drug paraphernalia). Thus, the State did not have to present evidence on the presence of drug residue in the pipe because it offered Deputy Lowe's unopposed testimony. Based on Deputy's Lowe's testimony, we cannot find that the jury lost its way in concluding that the pipe was drug paraphernalia. See Otten, supra.
 {¶ 13} Next, Freeland argues that the State failed to prove that he knowingly possessed the drug paraphernalia. He relies upon his own testimony in which he claimed that the pipe Deputy Lowe found actually belonged to his cousin, whom had borrowed Freeland's jacket the previous day. However, Freeland's issue was a matter for the trier of fact to decide. The jury was free to believe that Freeland never lent his jacket to his niece and the pipe was his, that he lent his jacket and the pipe was hers, or that he lent his jacket but the pipe was his. The jury chose to believe that Freeland knowingly possessed the drug paraphernalia that Deputy Lowe found in his jacket pocket. That the jury disagreed with Freeland's version of the events does not mean that it lost its way. The record reflects that the jury's verdict was not against the manifest weight of the evidence.
 {¶ 14} Having disposed of Freeland's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Freeland's sole assignment of error lacks merit. *Page 10 
 III {¶ 15} Freeland's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 11 
SLABY, P. J. DICKINSON, J. CONCUR.
[1] A Chore Boy is a cleaning product made of steel or copper wool and used for scouring. However, Chore Boys also "ha[ve] gained a rather large market as a make-shift part for homemade crack cocaine pipes" because they can double as "filtering device[s]" through which users can smoke crack. Wikipedia, Chore Boy, at http://en.wikipedia.org/wiki/Chore_Boy. See, also, State v. Semedo, 5th Dist. No. 2006CA00108, 2007-Ohio-1805, at ¶ 4, fn.1 (defining "Chore Boy" as "a metallic scouring pad that is torn into small pieces and used to block the end of a crack pipe in order to smoke crack cocaine"). *Page 1